UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JANICE L. HOLLABAUGH,<br><br>                Plaintiff,<br><br>    v.<br><br>OFFICE OF THE ARCHITECT OF THE CAPITOL,<br><br>                Defendant. | Civil Action No. 10-cv-0520 (BJR)<br><br>ORDER AND MEMORANDUM OPINION ON MOTION TO DISMISS |

This matter comes before the court on a Motion to Dismiss, or in the alternative, for Summary Judgment [dkt. #12] (hereinafter "*Def.'s Mot.*") by defendant, the Office of the Architect of the Capitol (hereinafter "OAC" or "the OAC"). Plaintiff Janice L. Hollabaugh asserts claims under the Congressional Accountability Act for gender discrimination, disability discrimination, violation of the Family Medical Leave Act, retaliation, and creation of a hostile work environment.

As a preliminary matter, the court will be treating OAC's motion as a Motion to Dismiss. *See Gordon v. Office of the Architect of the Capitol*, 750 F. Supp. 2d 82, 94 (D.D.C. 2010). There having been no discovery in this case, it is premature to resolve this matter on summary judgment. *Id.* (citing *Ciralsky v. CIA*, 689 F. Supp. 2d 141, 147 (D.D.C. 2010) ("Essentially, 56(f) allows the Court to delay or deny a motion for summary judgment as premature on the grounds that [some] discovery is necessary to rule on th[e] motion.")). OAC's Motion to Dismiss is granted in part and denied in part.

I.  **LEGAL STANDARD**

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the allegations within the four corners of the complaint after taking

those allegations as true. *In re Interbank Fund Corp. Sec. Litig.*, 668 F. Supp. 2d 44, 47-48 (D.D.C. 2009) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The court "must construe the allegations and facts in the complaint in the light most favorable to the plaintiff and must grant the plaintiff the benefit of all inferences that can be derived from the facts alleged." *Bailey v. Verizon Commc'ns, Inc.*, 544 F. Supp. 2d 33, 36 (D.D.C. 2008).

To survive a Rule 12(b)(6) motion, the complaint must plead sufficient facts, taken as true, to provide "plausible grounds" that discovery will reveal evidence to support the plaintiff's allegations.  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct." *Aschroft v. Iqbal*, 556 U.S. 662, ___, 129 S. Ct. 1937, 1949 (2009).  A complaint does not need detailed factual allegations, but a plaintiff must provide "more than labels and conclusions" to provide the grounds of her entitlement. *Twombly*, 550 U.S. at 555.  On a motion to dismiss, courts are not bound to accept as true legal conclusions couched as factual allegations. *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Because the court's review of a Rule 12(b)(6) motion is based upon consideration of the allegations contained in the operative complaint, the court will not consider extraneous documents attached or referenced by any party, or additional factual assertions contained therein, except under limited circumstances.  *See generally Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009); *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002).

## II.     STATUTORY BACKGROUND

Hollabaugh brings claims against the OAC under the Congressional Accountability Act of 1995 ("CAA").  The CAA extends to certain legislative branch employees the protections of a number of federal remedial statutes, including Title VII of the Civil Rights Act of 1964, 42

U.S.C. § 2000e-2, and Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12112-12114. *See* 2 U.S.C. § 1311(a). The CAA also incorporates the rights and protections under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 101-105. 2 U.S.C. § 1312(a). In addition, the CAA contains an anti-retaliation provision prohibiting intimidation, reprisal, or discrimination against a covered employee because that employee has initiated proceedings or participated in any manner in a proceeding under the CAA. 2 U.S.C. § 1317(a). The CAA applies to, *inter alia*, any employee of the OAC. 2 U.S.C. § 1301(3).

Section 1404(2) of the CAA creates a cause of action for covered employees to sue in federal court for violations of the Act. 2 U.S.C. § 1404(2). Section 1408(a) vests the district courts of the United States with jurisdiction over any civil action commenced under section 1404. 2 U.S.C. § 1408(a). Before initiating such an action, the employee must seek counseling by, and mediation with, the Office of Compliance. *Id.* Thereafter, the employee may bring an action against "the employing office alleged to have committed the violation, or in which the violation is alleged to have occurred." 2 U.S.C. § 1408(b).

### III. BACKGROUND

#### A. Factual Background

Taken in the light most favorable to the plaintiff, the facts are as follows: Plaintiff Janice Hollabaugh was employed as an elevator mechanic in the Elevator Shop of the Senate Office Buildings from October 27, 2008 to October 23, 2009. *Complaint* [dkt. #1] ¶¶ 14,47; *Def.'s Mot.* at 4.[1] Hollabaugh was the first woman employed in the Elevator Shop. *Complaint* ¶ 15. Hollabaugh's position was that of a probationary employee for one year. *Complaint* ¶ 16.

---

[1] Plaintiff's Complaint states that she was appointed on October 27, 2009; however, the full context of her factual background affirms that "2009" should read "2008."

Hollabaugh was diagnosed with narcolepsy in 1996. *Complaint* ¶ 11. Hollabaugh states that she advised two of her supervisors of her narcolepsy in either late June or early July 2009, around the same time she received a verbal warning from one of her supervisors for failure to report to work on time. *Id.* ¶¶ 24-25.

Hollabaugh received written warnings for failing to report to work on time on August 17, 2009 and September 23, 2009. *Id.* ¶¶ 26-27. She was placed in AWOL status for fifteen minutes of tardiness on September 14, 2009. She was placed in AWOL status for one day of unscheduled absence on September 18, 2009, subject to her presenting medical documentation explaining her absence; the AWOL status was removed after she provided documentation. She was placed in AWOL status for thirty minutes of tardiness on September 22, 2009, and for fifteen minutes of tardiness on September 23, 2009. She was placed in AWOL status for fifteen minutes of tardiness on September 24, 2009, although she contends that she was two minutes late. Finally, she was placed in AWOL status for one day of unscheduled absence on October 6, 2009, subject to her presenting medical documentation explaining her absence; the AWOL status was removed after she provided documentation. *Id.* ¶¶ 60-67.

On September 25, 2009, Hollabaugh was reassigned from her duties as an elevator mechanic to work in the Elevator Shop performing duties related to inventory control. *Id.* ¶ 28. Hollabaugh states that her second-level supervisor, Steve Adler, told her that he was concerned that she was not well, and that she might endanger the health and safety of the other elevator mechanics and the public. He explained that he would return her to her duties as an elevator mechanic when he determined that she was well enough not to be a danger. Hollabaugh told him that she was capable of working on the elevators without endangering her fellow mechanics or the public. *Id.* ¶¶ 17, 29-32. During the week of October 5, 2009, Adler returned Hollabaugh to her duties as an elevator mechanic. *Id.* ¶ 40.

During the week of September 28, 2009, her fourth-level supervisor, Trent Wolfensburger, met with Hollabaugh and provided her with official forms outlining procedures for requesting reasonable accommodation under the ADA, although she had never spoken to him previously of her narcolepsy. *Id.* ¶¶ 17, 33-35.  During the same conversation, Hollabaugh asked him for accommodation under the ADA by way of a flexible time and work schedule that would allow her to make up lost time at the end of her shift if she were late, which Wolfensburger denied. *Id.* ¶¶ 36-37.  Hollabaugh made the same request at a meeting with her three immediate supervisors a few days later, but her request was again denied. *Id.* ¶ 38.

On October 6, 2009, Hollabaugh had a doctor execute form WH-380 for Hollabaugh to request intermittent leave under FMLA relating to her narcolepsy.  On October 7, 2009, Hollabaugh attempted to submit the form to Adler, who refused to accept it.  The same day, Hollabaugh attempted to submit the form to Dave Hollifield, her third-level supervisor.  He refused to accept the form, but later advised her to submit an application for FMLA leave without pay to Wolfensburger. *Id.* ¶¶ 41-46.

On October 8, 2009, Hollabaugh was notified by letter from the Acting Architect of the Capitol that her employment with OAC would be terminated effective October 23, 2009, four days short of the expiration of her probationary year.  She was terminated for tardiness and five instances of failure to follow leave procedures. *Id.* ¶¶ 47-48.

Although she had been notified of her termination on October 8, on October 21, 2009, Hollabaugh submitted the WH-380 form requesting intermittent FMLA leave to Adler. Hollabaugh informed Adler that she was told to submit the form to him, although he believed she was to submit it to Wolfensburger.  OAC did not respond to her request for FMLA leave. *Id.* ¶¶ 49-54.

On October 23, 2009, the effective date of her termination, Hollabaugh submitted a request for reasonable accommodation to the Equal Employment Opportunity/Conciliation Programs Office of the OAC pursuant to the ADA. Hollabaugh requested an Alternate Work Schedule based on her narcolepsy. OAC did not respond to her request for reasonable accommodation. *Id.* ¶¶ 55-58.

Hollabaugh also states that, during the course of her employment with OAC, she was deprived of the privilege of parking her car across the street from the Dirksen Building from 5:00 A.M. to 8:00 A.M. Hollabaugh alleges that she was denied use of the parking lot because of her gender *Id.* ¶ 68.

### B.    Procedural Background

Hollabaugh states that, on October 21, 2009, she timely filed a "Request for Counseling" with the Office of Compliance pursuant to 2 U.S.C. § 1402 of the CAA, claiming unlawful discriminatory and unlawful retaliatory employment practices in violation of the CAA. She further states that she timely requested and participated in mediation pursuant to 2 U.S.C. § 1403. Finally, she states that she filed her Complaint within 90 days of receipt of the December 28, 2009 "End of Mediation Notice" from the Office of Compliance. *Id.* ¶¶ 8-10. OAC does not dispute that Hollabaugh participated in the mediation process, and makes no arguments as to this court's subject matter jurisdiction.

Hollabaugh filed her complaint on March 30, 2010. *Complaint* [dkt. #1]. OAC filed this motion on March 9, 2011. The case was reassigned from Judge Walton to Judge Boasberg on March 30, 2011. The case was reassigned from Judge Boasberg to Judge Rothstein on January 27, 2012.

### III.  DISCUSSION

#### A.  Counts I-VIII:  Gender Discrimination Claims

Hollabaugh sets forth eight claims alleging that she was subjected to discrimination based on sex in violation of Title VII, as incorporated by the CAA.  In Counts I, III, and VII, Hollabaugh alleges that she was made to provide documentation in support of her taking unscheduled leave, irrespective of the amount of time she took for leave and although she had not been placed on leave restriction. *Complaint* ¶¶ 70, 80, 100.  Hollabaugh claims that requiring such documentation was "the application of a different administrative method for leave administration based on [her] female sex and gender." *Id.* ¶ 59.  In Counts II, IV, V, and VI, Hollabaugh contests her placement in AWOL status on various occasions for being anywhere from two to thirty minutes late. *Id.* ¶¶ 75, 85, 90, 95.  In Count VIII, Hollabaugh alleges that she was denied use of the parking lot across the street from the Dirksen Senate Office Building from 5:00-8:30 A.M., which she claims was "applying . . . a different administrative method for use of the parking lot . . . than that applied to male employees." *Id.* ¶ 105.  In each Count, she claims that "[t]here was a causal connection between [her] female sex and gender and [OAC's] applying to [her] a different administrative method . . . than that applied to male employees of the Electric Shop of the Senate Office Buildings." *Id.* ¶ 71-106.  Hollabaugh claims that, as a result of the above practices and actions, she has suffered and continues to suffer damages including lost wages, medical expenses, attorney's fees, and emotional distress. *Id*. ¶¶ 73-108.

Section 1311(a)(1) of the CAA states that "personnel actions affecting covered employees shall be made free from any discrimination based on race, color, religion, sex, or national origin, within the meaning of section 703 of the Civil Rights Act of 1964 (42 U.S.C. § 2000e-2)." 2 U.S.C. § 1311(a)(1).  To properly state a claim pursuant to Title VII, two essential elements must be alleged:  (i) that the plaintiff suffered an adverse employment action, and (ii)

that the adverse employment action was based on the plaintiff's sex. *Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008).

Upon the court's review of the complaint, Hollabaugh has failed to plead enough facts to state facially plausible claims that the actions she described were based on her being female. Rule 8 of the Federal Rules of Civil Procedure requires "more than an unadorned, the-defendant-unlawfully-harmed me accusation." *Iqbal*, 129 S. Ct. at 1949. As discussed above, the standards of *Twombly* and *Iqbal* do not require the court to accept as true bare allegations and legal conclusions merely because they are set forth as fact. *Twombly*, 550 U.S. at 555. It is not enough that Hollabaugh was the first woman employed in the Elevator Shop in the Senate Office Buildings. She fails to recite facts sufficient to "raise a right to relief above the speculative level." *Id.*

That said, there are references to facts in Hollabaugh's opposition to defendant's motion that do not appear in her Complaint, and which suggest that she might have additional factual claims. For that reason, the court dismisses Counts I-VIII of her Complaint without prejudice, and with leave to amend.

**B.    Counts IX-X: Americans with Disabilities Act Claims**

Hollabaugh sets forth two claims relating to her alleged disability of narcolepsy. Section 1311(a)(3) of the CAA states that "personnel actions affecting covered employees shall be made free from any discrimination based on disability, within the meaning of . . . sections 102 through 104 of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12112-12114)." 2 U.S.C. § 1311(a)(3). Like a Title VII claim, the two essential elements of an ADA claim are that the plaintiff suffered an adverse employment action, and that the adverse employment action was based on plaintiff's disability. *Baloch*, 550 F.3d at 1196.

In Count IX, Hollabaugh alleges that her OAC supervisor discriminated against her when he reassigned her from her duties as an elevator mechanic to inventory control in the Elevator Shop because he perceived her as being disabled. *Complaint* ¶ 110. She claims that there was a "causal connection" between her chronic disability and medical condition of narcolepsy and OAC's "regarding [her] as disabled" and reassigning her to inventory control. *Id.* ¶ 111.

The typical adverse actions in employment cases tend to involve termination, denial of a job or promotion, or a reduction in salary or benefits. *Baloch*, 550 F.3d at 1196. The D.C. Circuit has held, however, that an "adverse employment action" need not entail a loss of salary, grade level, or benefits if the plaintiff has "raised a genuine issue as to whether the reassignment left [the employee] with '*significantly different*'—*and diminished* . . . responsibilities." *Id*. (quoting *Czekalski v. Peters*, 475 F. 3d 360, 364 (D.C. Cir. 2007) (emphasis in *Baloch*)).

Based on the facts alleged by Hollabaugh, her brief reassignment to inventory control did not culminate in qualitatively inferior work requiring any less skill or knowledge. As discussed above, Hollabaugh was reassigned from her duties as an elevator mechanic on September 25, 2009, and returned to those duties during the week of October 5, 2009. As such, she was reassigned for a period of no more than two weeks. Hollabaugh does not claim that her wages or benefits were altered in any way during that two week period, nor that the brief reassignment had any lasting effect on her duties as an elevator mechanic. She claims in general terms that the OAC's actions adversely affected and altered the terms, conditions, and privileges of her employment and employment status, and that she has suffered lost wages, medical expenses, attorney's fees, and emotional distress as a result of the actions, but she offers no facts to support her assertions. *Id*. ¶¶ 112-13.

Again, Hollabaugh has failed to plead enough facts to state a facially plausible claim against the OAC. She has not pled facts that allow the court to infer that Hollabaugh

9

experienced any adverse effects as a result of the brief reassignment, much less that OAC is liable for any effects. Count IX is dismissed without prejudice, with leave to amend.

In Count X, Hollabaugh alleges that OAC disregarded her requests for reasonable accommodation pursuant to the ADA by way of an Alternate Work Schedule. Hollabaugh claims that OAC's "disregard" of her requests for reasonable accommodation during the week of September 28, 2009 and on October 23, 2009, constituted an unlawful employment practice based on her chronic disability of narcolepsy. *Complaint* ¶ 115.

Under the ADA, "discriminat[ion] against a qualified individual on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee." 42 U.S.C. § 12112(b)(5)(A).

As to the request made the week on September 28, 2009, Hollabaugh has stated a claim sufficient to survive a motion to dismiss. She alleges that she represented to her supervisors that she was in need of reasonable accommodations under the ADA, and that she was terminated shortly thereafter. At this phase of the litigation, nothing more is required.

On the other hand, as to the request made on October 23, 2009, Hollabaugh fails to state a claim upon which relief can be granted. Hollabaugh states that she was informed of her termination on October 8, 2009, and that the termination would be effective on October 23, 2009. It is difficult to conceive that her request on October 23 would result in an "adverse employment action," when that employment was already terminated. Therefore, Count X is dismissed with prejudice as to the October 23, 2009 request, but is not dismissed as to the request during the week of September 28, 2009.

### C.    Counts XI-XIII:  Family Medical Leave Act Claims

Hollabaugh alleges three claims under FMLA.  In Counts XI and XII, she claims that OAC's disregard of her request for use of intermittent FMLA leave on October 7, 2009, and on October 21, 2009, were unlawful employment practices in violation of Section 1312(a) of the CAA and 29 C.F.R. §§ 825.220(a)(1) and 825.220(b). *Complaint* ¶¶ 120, 125.  In Count XIII, she claims that OAC placed her in an AWOL status, and later terminated her, for taking intermittent FMLA leave on September 14 and September 22-24, 2009, in violation of Section 1312(a) of the CAA and 29 C.F.R. § 825.220(c) . *Id.* ¶ 130.

Section 1312(a) of the CAA provides that the "rights and protections established by section 101 through 105 of the Family Medical Leave Act of 1993 (29 U.S.C. §§ 2611-2615) shall apply to [employees covered by the CAA]." 2 U.S.C. § 1312(a)(1).  Section 1312(a) clarifies that "eligible employee" as used in FMLA "means a covered employee who has been employed in any employing office for 12 months and for at least 1,250 hours of employment during the previous 12 months." 2 U.S.C. § 1312(a)(2).

"Federal courts recognize two distinct theories of recovery that arise under the FMLA statute; entitlement (also called interference) pursuant to 29 U.S.C. § 2615(a)(1), and retaliation (also called discrimination) pursuant to 29 U.S.C. § 2615(a)(2)." *Ghawanmeh v. Islamic Saudi Acad.*, 672 F. Supp. 2d 3, 14 n.3 (D.D.C. 2009) (quoting *Cox v. True North Energy, LLC*, 524 F. Supp. 2d 927, 934 (N. D. Ohio 2007)).  In order enforce the rights provided by the statute, a plaintiff must qualify as an "eligible employee" under the FMLA. *Id.* at 14.

The key issue with Hollabaugh's claims under FMLA is that she was not an eligible employee.  She states in her complaint that her employment ended on October 23, 2009, "four days short of the expiration of her probationary year." *Complaint* ¶ 47.  She also states that she started work on October 27, 2008, and was terminated as of October 23, 2009, which is fewer

than twelve months. *Id.* ¶¶ 14, 47. At no point does she allege that she had worked at least 1,250 hours during that period. Furthermore, her opposition to OAC's motion does not address the question of her eligibility under the statute.

Given that the facts in Hollabaugh's complaint demonstrate that she is not an eligible employee under FMLA, she is not able to state a claim under the statute for which she would be entitled to relief. Counts XI-XIII are dismissed.

### D. Count XIV: Retaliation Claim

Hollabaugh claims that "the activities described in Paragraph 28 through Paragraph 67 herein this Complaint" (which includes all of the actions she alleges were taken by her supervisors) were in violation of 2 U.S.C. § 1317(a) of the CAA, because they comprised retaliatory employment practices based on her participation in federally protected activities pursuant to the ADA and FMLA. *Complaint* ¶ 135. More specifically, plaintiff alleges that her participation in federally protected activities resulted in her being placed in AWOL status on September 14, 18, 22- 24, and October 6, 2009, and in her subsequent termination. *Id.* ¶ 138.

Section 1317 of the CAA makes it "unlawful for an employing office to intimidate, take reprisal against, or otherwise discriminate against, any covered employee because the covered employee has opposed any practice made unlawful by this Act, or because the covered employee has initiated proceedings, made a charge, or testified, assisted, or participated in any manner in a hearing or other proceeding under this Act." 2 U.S.C. § 1317(a). Claims arising under Section 1317 are analyzed under the framework and standards governing Title VII's anti-retaliation provision. *Herbert v. Architect of the Capitol*, 766 F. Supp. 2d 59, 75 n.13 (D.D.C. 2011). "[C]ourts routinely rely upon Title VII case law when evaluating whether a challenged employment action is sufficiently adverse under the CAA's anti-retaliation provision." *Id*. To state a claim for retaliation, the plaintiff "must show that (1) she engaged in a statutorily

protected activity; (2) she suffered a materially adverse action by her employer; and (3) a causal connection existed between the two." *Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 185 (D.D.C. 2011) (quoting *Wiley v. Glassman*, 511 F.3d 151, 155 (D.C. Cir. 2007)). A "materially adverse action" is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The "causal connection" component may be established by showing that the employer had knowledge of the employee's protected activity, and that the materially adverse employment action took place shortly after that activity. *Bolden v. Office of the Architect of the Capitol*, Case No. 01-CV-251, 2005 U.S. Dist. LEXIS 4465, at *14 (D.D.C. March 15, 2005).

Hollabaugh's claim fails on the first element. A request for reasonable accommodation within the meaning of the ADA does not constitute statutorily protected activity under the CAA. *Trawick v. Hantman*, 151 F. Supp. 2d 54, 63 (D.D.C. 2001), *aff'd per curiam*, Case No. 01-5309, U.S. App. LEXIS 4325 (D.C. Cir. 2002); *Dean v. Hantman*, Case. No. 00-CV-2131, U.S. Dist. LEXIS 24662, at * 19-20 (D.D.C. August 8, 2001). As noted above, Section 1317(a) applies when an employee has opposed a practice made unlawful by the CAA, or when an employee has initiated proceedings under the CAA. 2 U.S.C. § 1317(a). Hollabaugh submitted her request for reasonable accommodation to the Equal Employment Opportunity/Conciliation Programs Office of the OAC on October 23, 2009, the effective date of her termination. *Complaint* ¶ 55. It was not until she took that action that Hollabaugh engaged in protected activity under Section 1317, by which time she had already been terminated. *See Trawick*, 151 F. Supp. 2d at 63.

Similarly, Hollabaugh's submission of Form WH-380 to her supervisors does not constitute an initiation of proceedings under the CAA, and does not give rise to a retaliation claim under Section 1317. Hollabaugh has failed to state a claim for retaliation under Section 1317 of the CAA, and Count XIV is dismissed.

### E.     Count XV:  Hostile Work Environment Claim

Hollabaugh claims that she experienced a hostile work environment stemming both from discrimination against her based on her disability and retaliation against her for seeking reasonable accommodation under the ADA and requesting leave under FMLA. *Complaint* ¶ 142. To prevail on a hostile work environment claim, a plaintiff must show that her employer subjected her to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Baloch*, 550 F.3d at 1201 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In her Complaint, Hollabaugh makes the following allegations in support of her hostile work environment claim:

> The pattern of decisions taken by Defendant's decisionmaking agents resulting in the allegations set forth [in the rest of the Complaint] were unlawful discriminatory and unlawful retaliatory employment practices which created a hostile work environment which deprived Plaintiff of the terms, conditions and privileges of employment respecting a workplace environment free of discrimination and retaliation.
>
> The pattern of decisions taken by Defendant's decisionmaking agents resulting in the allegations set forth [in the rest of the Complaint] was based on Plaintiff's requests for reasonable accommodation under the ADA, Defendant's regarding Plaintiff as disabled under the ADA and Plaintiff's requests and use of intermittent FMLA leave.

*Complaint* ¶¶ 142-43.

These allegations do not contain "sufficient factual matter" to support her claim that she experienced conditions "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive working environment." *Iqbal*, 129 S. Ct. at 1949; *Harris*, 510 U.S. at 21.  She has failed to allege any factual descriptions regarding an alleged hostile work

environment, both in this claim and in the rest of her Complaint as a whole.  Therefore, Count XV is dismissed without prejudice.

**NOW, THEREFORE,** for the reasons stated herein, it is

**ORDERED** that defendant's Motion to Dismiss is **GRANTED** in part and **DENIED** in part.  It is further, hereby,

**ORDERED** that defendant's Motion for Summary Judgment is **DENIED** without prejudice.  It is further, hereby,

**ORDERED** that Counts I-IX and XV of plaintiff's Complaint are **DISMISSED** without prejudice.  It is further, hereby,

**ORDERED** that Count X of plaintiff's Complaint is **DISMISSED** with prejudice as to the request for accommodation on October 23, 2009.  It is further, hereby,

**ORDERED** that Counts XI-XIV of plaintiff's Complaint are **DISMISSED** with prejudice.

**SO ORDERED.**

March 9, 2012

BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE